IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK HOWARD				:	CIVIL ACTION
						:
	v.					:
						:
PHILADELPHIA INDUSTRIAL		:	NO. 15-2843
CORRECTIONAL FACILITY, et al.:

ORDER AND OPINION

JACOB H. HART					DATE:  September 19, 2016
UNITED STATES MAGISTRATE JUDGE

      On May 21, 2015, this action, which was originally filed in state court on April 3, 2015, was removed to this Court.  Plaintiff Patrick Howard brings this action pursuant to 42 U.S.C. 1983, against defendants alleging that his civil rights were violated because Defendants were deliberately indifferent to his medical needs and that the City of Philadelphia maintained a policy, practice, procedure or custom that allowed for deliberate indifference to Plaintiff's medical needs.  Amended Complaint- Docket No. 8.  Howard filed an Amended Complaint on July 13, 2015.  The case was assigned to the Honorable Stewart Dalzell and on November 19, 2015, with the consent of the parties, the case was referred to the undersigned in accordance with 28 USC §636(c) and Fed. R. Civ. Pr. 73.  On August 25, 2015, Howard voluntarily dismissed Defendants Bryant and the City of Philadelphia.  Docket No. 12.

      Defendants in this case have now moved for summary judgment, and Howard has responded to their motion.  For the reasons set forth below, the motion for summary judgment will be granted.

I.        Legal Standard

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. Anderson v. Liberty Lobby, supra at 255; Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358 , 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett at 323.

II.        Discussion

Howard has suffered from seizures for approximately seven years and has taken the medication Keppra to limit the number of seizures he has. When Howard was first incarcerated in 2012, he began seeing a PICC medical professional and was prescribed the medication Keppra. Id. at 18:18-24. He also had a "bottom bunk bed accommodation" form dated November 9, 2013, which was signed by a prison physician indicating that because of his seizures he should be "bottom bunk, bottom tier." Plaintiff's Ex. 3.

On September 10, 2014, Howard was a pre-trial detainee at the Philadelphia Industrial Correctional Facility and was housed in a cell on J Block.  Statement of Undisputed Facts at ¶¶ 4, 10.  He was in the J Unit, which was a discipline unit, sometimes referred to as "the hole."  Plaintiff's Deposition at 19:10-14.  He suffered from a seizure while in his cell, which resulted in an injury to his head.  Plaintiff's Deposition at 15.  When asked if he was lying down when he had the seizure, Plaintiff testified that he "must have been laying down" because he was told that he fell and hit his head.  Id. at 18:7-14.

Howard acknowledged that Defendant Officer Quigley was not working on the day he had his seizure.  Id. at 26:11-17.  He testified that he does not remember what officers were working on the day of his seizure and does not remember which officers responded after the seizure.  Id. at 17:7-12.  He only remembers that when he woke up, he was in a triage unit and had to be transported to an outside hospital for stitches.  Id. at 17:15-22.

Defendants move for summary judgment because (1) Plaintiff has failed to present evidence that the named individuals had any personal involvement in any alleged wrongs and (2) Plaintiff has failed to establish that there was any violation of his Constitutional rights.

A.   Deliberate Indifference to a Serious Medical Need

Plaintiff claims that the defendants were deliberately indifferent to his medical condition. Deliberate indifference to a serious medical condition violates the proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Although the Eighth Amendment does not apply to pretrial detainees, the Due Process Clause of the Fourteenth Amendment "affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S.

3

239, 244 (1983).  Therefore, in order to establish a violation, Plaintiff must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).   In order to be "deliberately indifferent" a prison official must have subjective knowledge of the risk of serious harm and recklessly disregard that risk.  Farmer v. Brennan, 511 U.S. 825, 836-37 (1970).  Liability for deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

  Defendant does not dispute that Plaintiff suffers from a seizure condition.  The issue is whether defendants were deliberately indifferent to his medical needs pertaining to that condition.  As Defendants argue, Plaintiff has not presented any evidence that the named defendants had any personal involvement in any of the wrongs alleged by Howard.  Plaintiff claims that the Defendants were deliberately indifferent to his medical condition.  However, he has failed to even allege that the named defendants were present at the time he suffered from a seizure, resulting in injury to his head.  Statement of Undisputed Facts at ¶ 9.

  Plaintiff does not allege that Defendants refused to provide medical treatment or that he received improper treatment either before or after the seizure.  He admits that he received daily medication.  Plaintiff's Deposition 14:2-7.  He is also not alleging that Defendants provided him with improper medical treatment for his seizure condition or that they delayed in treating him on the date of this incident.  Instead, his only current claim is based upon his allegation that defendants ignored his medical condition by failing to adhere to his "bottom bunk bed accommodations" form completed by the prison physician.

  In his response to the motion for summary judgment, Howard asserts that Warden Bryant is responsible because although the identity of the prison staff responsible for his bunk

assignment is unknown, liability ultimately imputes to him. Doc. No. 33 at 8. It is undisputed that a prison physician completed a form indicating that because of his seizures Howard should be housed "bottom bunk, bottom tier." Plaintiff's Ex. B. As Plaintiff claims, at the time of the incident involved in this case Plaintiff was housed in the J unit in a second tier cell. However, the record demonstrates that Plaintiff was not assigned to a top bunk. In fact, it is undisputed that there is only one bunk in each cell in this unit.

Contrary to Plaintiff's claim that he "suffered serious injuries as a result of falling from his second tier bunk during a seizure", the record demonstrates that there are no actual bunks in the J unit, but only single beds. The fact that he was in a second *tier* cell did not affect the distance he allegedly fell from his bed in his cell while having a seizure[1]. As Bryant explained, the J unit has two tiers, which simply means that there are steps to get up to the row of cells, not steps inside the individual cells or steps to get to the bed (or bunk) inside the cell. See Plaintiff's Dep. at 38:14-39:18.

It is undisputed that Plaintiff's seizure which resulted in injury to his head occurred while he was locked in his cell. Plaintiff is not even sure where he was in the cell, but assumes that since he fell, he must have fallen from the bed. Plaintiff's Dep. at 18:7-14. According to the undisputed evidence, although he was in a second tier cell, the bed was a single bed or equivalent to a bottom bunk, with no upper bunk. Therefore, Plaintiff is unable to demonstrate any harm caused by a failure to follow the bottom tier/ bottom bunk restrictions imposed by the prison physician. As a result, Howard is unable to show any damages caused by Plaintiff's cell or bunk

---

[1] Plaintiff is unable to demonstrate causation as is required for any tort. See Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (For a claim of deliberate indifference, as with any tort claim, Plaintiff must show the injury was caused by the defendant's wrongful conduct). Howard does not allege that he suffered any harm which resulted from the defendant's alleged wrongful conduct of housing him in a second tier cell, since nothing happened on the steps to get to the row of cells and it is undisputed that the seizure and resulting injury occurred while he was locked in his cell.

5

assignment or Defendant's alleged disregard or refusal to follow the physician imposed recommendation or restriction.

Plaintiff does not even allege any personal actions by Officer Quigley or Warden Bryant which resulted in injury. In Howard's response to the motion for summary judgment he refers to an incident on December 9, 2014, after the incident in which Plaintiff suffered a seizure resulting in injury to his head. Plaintiff claims that Officer Quigley physically forced him into a top tier cell. Plaintiff's Dep. at 50:12; Plaintiff's Ex. F- Grievance Form 12/10/14. He argues that this incident is evidence of the prison's continuing failure to follow physician's orders regarding bunk and cell assignment. However, this later incident is not a subject of this case and is not alleged in Plaintiff's Amended Complaint. Docket No. 8.

Even considering the facts in the light most favorable to Plaintiff, Plaintiff has failed to demonstrate that the defendants were deliberately indifferent to his medical needs or that the injury he sustained resulted from any Constitutional violation. As a result, Defendants Quigley and Bryant are entitled to summary judgment.

B.     Monell Claim

Under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), a municipality such as the City is liable under § 1983 when the constitutional injury to the plaintiff can be attributed to its policy or custom. Deliberate indifference by the municipality to the rights of its citizens will also support a Monell claim. City of Canton v. Harris, 489 U.S. 378 (1986).

Defendants move for summary judgment as to Plaintiff's claim against the City of Philadelphia on the basis that Plaintiff has not established a Constitutional violation and because he has failed to establish that the city through any policy or custom, caused the underlying violation. See Motion at 7-8. Plaintiff responds by claiming that the two instances of assigning

Plaintiff to a "second tier bunk" constitute a continuing policy and/or practice to not verify medical conditions with medical staff or records and to place prisoners in dangerous living quarters. Response to Summary Judgment at 9. As set forth above, Plaintiff has failed to establish a Constitutional violation. Since there was no Constitutional violation, the claim against the City must be dismissed. See Wargo v. Municipality of Monroeville, 646 F. Supp. 2d 888, 789 (W.D. Pa. 2009). Furthermore, while we find that he has failed to make the requisite showing for a Monell claim, the City of Philadelphia has already been dismissed from the case by way of a voluntary stipulation. Docket No. 12.

III.    Conclusion

In accordance with the above discussion, Defendants' motion will be granted. For the reasons set forth above, I now enter the following: